UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
OCT 2 1 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

ELEEN A.,[1]

Plaintiff,

v.

24-CV-345 (JLS)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

# DECISION AND ORDER

Plaintiff Eleen A. brought this action under 42 U.S.C. § 1383(c)(3) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 6. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 9, 10. For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Supplemental Security Income ("SSI"), filed on October 30, 2020.[2] Tr. 221–27.[3] Plaintiff's application was initially denied, and she requested a hearing before an administrative law judge ("ALJ"). *Id.* at 141–44, 157–59. Following the hearing, at which Plaintiff was represented by counsel, ALJ Derek Phillips issued a decision finding that Plaintiff was not disabled. *Id.* at 22–35, 42–65. Plaintiff's request for Appeals Council review was denied, after which Plaintiff commenced this action. *Id.* at 1–3; Dkt. 1.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such

---

[2] Plaintiff applied for SSI, which "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (citation modified).

[3] The filings at Dkts. 3 and 4 are the transcript of the proceedings before the Social Security Administration. All references to Dkts. 3 and 4 are hereby denoted "Tr. __."

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation modified).

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II. DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* § 416.972. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* § 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(d). If such criteria are met, then the claimant is declared disabled. *Id.* § 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.* § 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* § 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. *Id.* § 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* § 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* § 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age,

education, and work experience. *Id.* § 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her RFC, age, education, and work experience. *Id.* §§ 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I. THE ALJ'S DECISION

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since October 30, 2020, the date her application was filed. Tr. 24. The ALJ also found that Plaintiff suffered from the following severe impairments: "obesity and cervical degenerative disc disease with cervicalgia." *Id.* The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 26–27.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> [Plaintiff] can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday, she can sit for 6 hours and stand/walk a total of 6 hours.[] She can operate hand controls with [the] right hand frequently[] . . . [and] with [the] left hand occasionally. She can occasionally reach overhead with the left upper extremity[] and [can] frequently reach overhead with the right upper extremity. For all other directions, [she] can reach frequently with the left upper extremity. She can handle[,] feel, and/or finger items frequently with the left hand. [She] can climb ramps and stairs frequently[] but [can] only occasionally

> climb ladders, ropes, or scaffolds. [She] can frequently balance, stoop, kneel, and/or crouch, [and] she can crawl occasionally. [She] can work at unprotected heights occasionally, [and] can frequently operate a motor vehicle[] and/or be exposed to vibration [or] extreme cold.

*Id.* at 27.

The ALJ next found that Plaintiff had no past relevant work as defined under 20 C.F.R. § 416.965. *Id.* at 33. The ALJ concluded that Plaintiff was not disabled because her age, education, work experience, and RFC allowed her to perform jobs existing in significant numbers in the national economy. *Id.* at 34–35. As such, according to the ALJ, Plaintiff had not been under a disability since the date her application was filed. *Id.* at 35.

## II. PLAINTIFF'S ARGUMENT

Plaintiff argues that the ALJ erred in three ways. *See* Dkt. 6-1 at 1, 13–25. First, Plaintiff argues that, despite finding Plaintiff to have a severe impairment of the cervical spine, the ALJ failed to include associated restrictions in the RFC. *Id.* at 14–19. Second, Plaintiff argues that the ALJ improperly crafted specific reaching and handling limitations. *Id.* at 19–21. Finally, Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective complaints. *Id.* at 21–25. For the reasons that follow, Plaintiff's arguments lack merit.

## III. ANALYSIS

### A. The ALJ properly considered Plaintiff's severe cervical spine impairment and the RFC was supported by the record.

At step two of the disability determination, an ALJ must "consider[] whether [a] claimant has a severe impairment which significantly limits [his or her] physical or mental ability to do basic work activities." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation modified). The ALJ did that here, finding that Plaintiff had two severe and medically-determinable impairments: "obesity and cervical degenerative disc disease with cervicalgia." Tr. 24.

Plaintiff argues that, despite the ALJ finding her to have a severe impairment of the cervical spine at step two, the ALJ failed to account for that impairment at step four. *See* Dkt. 6-1 at 14. More specifically, she contends that the ALJ's failure to include "limitations on her ability to turn and move her neck" was contrary to "evidence and [her] testimony" in the record, requiring remand. *Id.* Because an ALJ is not obligated to credit Plaintiff's testimony and the ALJ relied on substantial medical evidence to craft the RFC, Plaintiff's argument is misplaced.

At step four, an ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). That does not mean that an RFC must "perfectly correspond with any of the opinions of medical sources cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024) ("There is no blanket requirement that [an

ALJ's] decision must be supported by a congruous medical opinion"). So long as an ALJ considers all the medical evidence and appropriately analyzes any medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. § 416.945; *see also Cichocki*, 729 F.3d at 177 (joining five other circuits in holding that remand is not necessary "[w]here an ALJ's analysis at Step Four . . . affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

The ALJ's opinion demonstrates a considered engagement with the record evidence, which provides a substantial basis to support his exclusion of neck limitations from the RFC. After his review of the voluminous medical records—encompassing 1,270 pages—the ALJ explicitly cited seven medical appointments and surgeries in 2016, 2018, 2020, and 2021, and relied on the medical opinions of a "State Agency medical consultant" (Corinne Krist, DO), an internal medicine consultative examiner (Nikita Dave, M.D.) and a psychological consultative examiner (Gregory Fabiano, PhD). Tr. 27–33.

Contrary to Plaintiff's assertion that the ALJ's RFC determination was "ambiguous and clearly untethered" to the record, Dkt. 6-1 at 21, his findings are well-supported by opinion evidence. The ALJ adapted his light work limitation from Dr. Krist's opinion, which he found to be consistent with the records at the reconsideration stage. Tr. 32, 121; *see generally id.* at 104–21. The lifting and carrying limitations mirror those found in Dr. Dave's opinion, which the ALJ found "persuasive" given Plaintiff's "cervical spine surgery and ongoing residual effects."

*Id.* at 33, 1531; *see generally id.* at 1527–33. And the ALJ's finding that Plaintiff's mental limitations "do[] not appear to be significant enough to interfere with [] daily functioning" are supported by Dr. Fabiano's examination, which identified only mild-to-moderate mental impairments. *Id.* at 33, 1544; *see generally id.* at 1540–45.

Furthermore, the ALJ's RFC determination properly discounted the Plaintiff's subjective complaints of neck immobility due to the disconnect between her hearing testimony and medical evaluations. An ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) (summary order) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)) (citation modified). Contrary to Plaintiff's assertion that she "can[not] turn [her] head to the left side," Tr. 52, a medical report by Matthew Goodfellow, M.D. on December 4, 2020 indicated that she had a "normal range of motion," *id.* at 1431, and a second opinion by Myron Glick, M.D. on December 22 reviewed CT scans of her neck to find "well-placed instrumentation" from her prior disc-fusion surgery along with "nearly full" cervical range of motion "in all planes." *Id.* at 311. The ALJ further cited Dr. Dave's largely unremarkable 2022 evaluation, which opined that she was not in any acute distress, her neck was supple, and that she had not sought treatment for cervical issues since 2019. *Id.* at 31, 1527–33.

The medical evidence that Plaintiff points to in support of her cervical neck limitations—findings related to her worker's compensation application in 2019—

originated "[p]rior to [her] filing." Dkt. 6-1 at 15. While the ALJ did evaluate and discuss some of Plaintiff's older records, his RFC finding focuses on her more recent consultative examinations and medical appointments. *See* Tr. 28, 308 (discussing Plaintiff's cervical spine imaging in 2016); *id.* at 31, 1527–33 (contrasting her hearing testimony as to the 2018 surgery with Dr. Dave's consultative examination). The substantial evidence standard means that, "once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original). A reasonable fact finder could credit Drs. Goodfellow, Glick, and Dave's opinions over Plaintiff's testimony and older medical records.

Plaintiff further argues that, even if the ALJ's determination was substantially supported, he failed to "provide[] an explanation as to why [the] additional limitations" were not necessary, and that such a failure "is reversible error." Dkt. 6-1 at 17. This overstates the ALJ's burden in determining RFC and, in any case, is not an error that justifies remand under the Act's generous standard of review.

While an ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative medical findings, *see* 20 C.F.R. §§ 416.920c(a)–(c), they "need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of [that] decision.'" *Cichocki*, 729 F.3d at 178 n.3 (quoting *Mongeur v. Heckler*, 722 F.2d

1033, 1040 (2d Cir. 1983)). The ALJ properly evaluated the medical opinions and his reasons for relying (or not) on each doctor's findings. *See* Tr. 32–33 (weighing the consistency of each medical opinion with the record evidence). And each of the limitations in the RFC was supported by opinion evidence. *See supra*, at 8. Because an ALJ "does not have to state on the record every reason justifying a decision," *Brault*, 683 F.3d at 448, he did not err in his duty to provide an "accurate and logical bridge" between the record evidence and his RFC determination by not explicitly detailing his reasons for excluding additional neck and rest limitations. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

Ultimately, Plaintiff disagrees with the ALJ's choice to weigh Drs. Krist, Dave, and Fabiano's opinions—as well as Plaintiff's own statements in recent medical appointments—over her hearing testimony and prior work restrictions. But it is not the function of this Court to re-weigh evidence or determine *de novo* whether Plaintiff is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and a searching review of the record reveals that consistency, his decision is supported by substantial evidence and this Court will not second-guess it. *See Biestek*, 587 U.S at 103 ("[T]he threshold for [substantial] evidentiary sufficiency is not high" in the Act context); *Genier*, 606 F.3d at 49 ("Even where the administrative record may [] adequately support contrary findings on particular

issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.") (citation modified).

**B. The ALJ's reaching and handling limitations were supported by substantial evidence.**

The ALJ determined that Plaintiff had the RFC to perform "light work" with, among other restrictions, a limitation to operating hand controls with the left hand occasionally, but frequently with the right hand, occasionally reaching overhead with the left upper extremity, yet frequently with the right upper extremity, and frequently reaching in all other directions with the left upper extremity. Tr. 27. Plaintiff questions the reaching and handling limitations, arguing that it is "unclear how the ALJ arrived at [those findings,]" given that Dr. Krist's opinion—the only one the ALJ found to be entirely persuasive—did not include similar limitations. Dkt. 6-1 at 19. Plaintiff's argument misunderstands the ALJ's discretion to craft a *more* restrictive RFC than the evidence demands and is, thus, unpersuasive.

Plaintiff correctly notes that there are limits on an ALJ's ability to craft specific limitations. *See id.* at 19–21. For example, if an ALJ includes a "highly[] specific" limitation in a claimant's RFC, that limitation cannot come from whole cloth. *See Tomicki v. Berryhill*, No. 15-CV-847, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018). Therefore, when the medical evidence and opinions suggest certain specific limitations, the ALJ cannot make up less-restrictive limitations without pointing to other evidence supporting the decision to do so. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *Tomicki*, 2018 WL 703118, at *5 ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between

sitting and standing only every thirty minutes. The ALJ did not cite any evidence to support this highly[ ]specific sit-stand option . . . . Moreover, there is evidence in the record indicating that [the claimant] needs to change positions every few minutes, not every thirty minutes.").

When no medical provider opines about a specific limitation, however, an ALJ does not err by crafting a specific limitation and giving a claimant "the benefit of the doubt." *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("The fact that the ALJ afforded [the p]laintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand."). In other words, when medical experts opine that a claimant has no limitation, or when an ALJ crafts a more-restrictive limitation than the medical opinion evidence requires, the ALJ does not err.

Plaintiff argues that Dr. Dave's opinion "noted limitations on reaching, handling[,] and fingering," which the ALJ did not discuss. Dkt. 6-1 at 19. But Dr. Dave's opined that "[h]and and finger dexterity are intact" with "[g]rip strength overall 4+ to 5- bilaterally," and his final statement makes no reference to any reaching, handling, or fingering limitations beyond "[m]oderate limitations for repetitive bending [and] twisting." Tr. 1531. Not only did the ALJ's opinion explicitly discuss Dr. Dave's opinion—finding it "partially persuasive" and adopting the bending and twisting limitations—his partial limitations on operating hand controls and reaching overhead are more restrictive than Dr. Dave's findings. *See id.* at 27, 32–33. Indeed, despite Plaintiff's additional allegation that the ALJ

ignored her subjective complaints, *see infra* Part C, it appears that the primary basis for the reaching and handling limitations was her own testimony, which he "gave . . . the greatest consideration supported by the record." Tr. 33.

Given the ALJ's deference to Plaintiff's testimony in including handling and reaching limitations, she "fails to demonstrate prejudice warranting remand." *Orlando A. v. Comm'r of Soc. Sec.*, No. 21-CV-339, 2023 WL 5344934 at *4 (W.D.N.Y. Aug. 21, 2023) (collecting cases holding that an RFC that is more restrictive than the underlying medical opinions is non-prejudicial and, thus, not grounds for remand). It would run counter to the underlying purpose of the Act's regulations and principles of judicial efficiency to remand for reconsideration when an ALJ extends the benefit of the doubt to a claimant even in the face of a record that "do[es] not support the extent or severity" of the claimed limitations, and the Court will not do so here. Tr. 31; *see Kiyantae N. v. Comm'r of Soc. Sec.*, No. 20-CV-6998, 2022 WL 2758309 at *4 (W.D.N.Y. July 14, 2022) ("As a general matter, where an ALJ imposes a limitation in his RFC that is *more* restrictive than the relevant medical opinions, there is no error and thus no grounds for remand with respect to that limitation.").

**C. The ALJ properly evaluated Plaintiff's subjective complaints.**

In assessing a claimant's subjective complaints, an ALJ must consider "the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." 20 C.F.R. § 404.1529(a). This is a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). First, an ALJ must determine whether, based on objective medical evidence, the claimant suffers from medical impairments which "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* This evaluation includes the claimant's "own statements, the observations and opinions of [] treating physicians, and the observations and opinions of other medical professionals who examined [the claimant] or reviewed [his or her] records." *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012); 20 C.F.R. § 404.1513(a). If, after that evaluation, the ALJ finds that the claimant's subjective complaints are not supported by the objective medical evidence, "the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 183.

The ALJ properly followed the procedure of the two-step inquiry and credibility analysis here. At step one, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged

symptoms." Tr. 28. But at step two, the ALJ concluded that Plaintiffs "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." *Id.* And during the credibility inquiry, he found that Plaintiff's daily activities "were not limited to the extent one would expect, given [her] complaints of disabling symptoms and limitations." *Id.* at 32.

Plaintiff argues that, in making that finding, the ALJ improperly discounted her "historical[] report[s]" of pain to medical providers, over-relied on her brief career as a YouTube creator, and misconstrued her choice not to pursue further surgery. *See* Dkt. 6-1 at 21, 23–24. While the ALJ properly evaluated the consistency of Plaintiff's subjective complaints with the medical evidence, his credibility analysis misconstrued Plaintiff's testimony. Still, because there is substantial evidence in the record to support the ALJ's analysis, his misstatements as to Plaintiff's daily activities are harmless error and do not require remand.

The ALJ's finding that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record[,]" Tr. 28, was an appropriate application of step two. Plaintiff's hearing testimony as to "significant pain in [her] neck and back following [an] accident in 2016 and surgery in 2018," *id.* at 31, was indeed well supported by her earlier documentation contemporaneous with the accident. *See* Dkt. No. 6-1, at 22–24; Tr. at 548–49, 732, 890. But as the ALJ noted, her complaints were inconsistent with the findings from her more recent medical evaluations *and* her own complaints during those evaluations. Tr. 31.

During her May 2022 examination with Dr. Dave, Plaintiff was in no acute distress, had a normal gait, supple neck, and broad range of motion in her neck and back with "slight tenderness" in her muscles. *See id.* at 1530. During that appointment, she stated that she was discharged from her spine surgeon's practice in 2019 after follow-up appointments found her neck to be "healing and almost healed," and she had not seen a different spine doctor since, nor any other specialist. *Id.* at 1528–29. She focused her complaints on her back pain, which she stated "comes and goes." *Id.* at 1529. The ALJ further contrasted her testimony with Dr. Glick's analysis of CT scans of her neck in 2020 to find "well-placed instrumentation" from her prior disc-fusion surgery along with "nearly full" cervical range of motion "in all planes." *Id.* at 311.

Finding Plaintiff's complaints unsubstantiated by the medical evidence, the ALJ then turned to her stated daily activities and prior earnings during the disability period. *Id.* at 32. When an ALJ finds that a "claimant's subjective complaints are not substantiated by the objective medical evidence, [they] must engage in a credibility inquiry." *Castillo v. O'Malley*, No. 24-41-CV, 2024 WL 4707253 (2d Cir. Nov. 7, 2024) (summary order) (citation modified).[4]

---

[4] The regulations direct ALJs to consider seven factors: "(1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain." Meadors, 370 F. App'x at 184 n.1 (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii)).

In performing this credibility analysis, the ALJ cited Plaintiff's own "Function Report," finding that she could get her kids ready for school, cook for them, drive for brief periods, and make her bed along with handling self-care and personal hygiene. Tr. 32; *see id.* at 274–81. Weighing that report and the $10,996 Plaintiff earned in 2021 working as a YouTube creator, the ALJ found that her daily activities "were not limited to the extent one would expect, given [her] complaints of disabling symptoms and limitations." *Id.* at 32.

But the ALJ's analysis was not entirely correct. He misread her report to indicate she "can drive but [for] no longer than 15 minutes." *Id.* In fact, she stated thrice in her report that she cannot drive because of the pain, and she "need[s] someone to drive for [her]." *Id.* at 270, 277, 278. And during the hearing, she confirmed twice that she had not driven since the accident because she "can't turn [her] head," and her daughter "[was] driving [her] everywhere." *Id.* at 48–49, 54. The ALJ also overstated Plaintiff's ability to cook—while she was once able to cook "big meals" "twice a day," she is now reduced to sandwiches and frozen dinners on a weekly, not daily, basis with her daughters cooking otherwise. *Id.* at 275–76. Plaintiff again reinforced this during the hearing, stating that "it's not [] really cooking," and that "[her] daughters do everything" more complex than toast. *Id.* at 55.

As to more qualitative concerns, the ALJ stated that Plaintiff has no friends, whereas she reports that, because of the injury and subsequent pain, she no longer feels capable of going out with her friends or meeting new people. *Id.* at 278. And

the ALJ appeared to find Plaintiff's ability to watch television, shop by phone, and speak with family overseas to undercut her claimed symptoms, despite her caveat that she can only sit and watch for ten minutes at a time and struggles to finish conversations or chores longer than thirty minutes. *Id.* at 278–79. It is also not entirely clear why Plaintiff's alleged neck and back pain, trouble sleeping, and limits on range of motion, lifting, handling, and fingering would be inconsistent with her stated hobbies and interests—staying at home, engaging in social media, and talking on the phone—as the ALJ determined. *Id.* at 32.

Where an "ALJ's credibility determination was based *largely* on [] factual errors, we cannot say that it is supported by substantial evidence." *Horan v. Astrue*, 350 F. App'x 483, 485 (2d Cir. 2009) (emphasis added). And because an ALJ must consider a plaintiff's testimony amongst all the other evidence of record when engaging in a credibility analysis, 20 C.F.R. §§ 404.1529, 404.1545(a)(3), if those factual errors indicate a "serious [] misunderstanding of [Plaintiff's] statements," the opinion "cannot . . . have complied with the requirement that they be taken into account." *Genier*, 606 F.3d at 50. But at least some of the ALJ's findings—such as the self-care, personal hygiene, simple chores, and getting her children ready for school—correctly reflect Plaintiff's testimony. Tr. 32. Moreover, the ALJ only turned to this testimony after finding Plaintiff's subjective complaints unsupported by a wide range of more recent medical records and opinions. *Id.* at 31.

Even where an ALJ "misstate[s] the record," if his or her credibility analysis "is otherwise supported by substantial evidence, this misstatement is nothing more

than harmless error." *Barringer v. Comm'r of Soc. Sec.,* 358 F. Supp. 2d 67, 83 n.26 (N.D.N.Y. 2005); *Graves v. Astrue,* No. 11-CV-6519, 2012 WL 4754740, at *13 (W.D.N.Y. Oct. 4, 2012) (quoting *Rockwood v. Astrue,* 614 F. Supp. 2d 252, 272 n.34 (N.D.N.Y.2009)).

The inconsistencies between the ALJ's description of Plaintiff's daily activities and her actual testimony (written or oral) trouble this Court.[5] But "inconsistency with the medical evidence constitutes a valid reason for finding [a claimant's] opinion to be unpersuasive" even in the absence of other credibility analysis. *Michael T. v. Comm'r of Soc. Sec.*, No. 6:24-CV-06108, 2025 WL 1419461, at *8 (W.D.N.Y. May 16, 2025) (quoting *Maria C. T. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1521, 2022 WL 2904367, at *7 (N.D.N.Y. July 22, 2022)). And here, the ALJ meaningfully engaged with the medical record to craft Plaintiff's RFC. In doing so, he found substantial evidence to support adverse credibility findings for some of her subjective complaints. Accordingly, the ALJ's error in evaluating certain elements of the Plaintiff's testimony is harmless.

---

[5] Courts in this District have repeatedly determined such misstatements to be harmless in the face of substantial medical evidence contradicting a claimant's subjective complaints. *See, e.g.*, *Scarpino v. Colvin*, No. 15-CV-6231P, 2016 WL 5372493, at *15 (W.D.N.Y. Sept. 26, 2016); *Buscemi v. Colvin*, No. 13-CV-6088P, 2014 WL 4772567, at *17 (W.D.N.Y. Sept. 24, 2014); *Davis v. Berryhill*, No. 6:17-CV-06168, 2018 WL 1980251, at *8 (W.D.N.Y. Apr. 27, 2018).

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 9) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 6). The Clerk of the Court shall close this case.

SO ORDERED.

Dated: October 21, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE